Good morning, Your Honor. Scott Tedman representing Angel Alvarez, the appellant in this case. I would like to reserve three minutes for the rebuttal. Also, I provided the court with a supplemental authority, Porter v. Olison, which I think the court has. You didn't supply us with Walker v. Martin? I'm sorry? You didn't supply us with Walker v. Martin? No, Your Honor. Are you aware of that case? No. Well, the Supreme Court's talking about it. Oh, I'm sorry, Your Honor. That's the one about the California Supreme Court. No, it's the United States Supreme Court. Yes, relative to the equitable tolling in California. No, that's not what it is at all. It has to do with whether there's a separate finding by the California which makes it a decision that we don't reach. Well, there's a case by the California Supreme Court, I think, which we were reversed on that area, and I read it last week. The advance sheet came to me, and I was aware when they put it out. It's been around since last February, I think. Yes, February 23. I'm surprised. I guess you didn't do your checking last week before you went to the hearing. Well, I did, and I did not see that, Your Honor, in terms of this case. I apologize. Well, it's just the whole case turns on it, and that's the problem. Very often what the Supreme Court says doesn't necessarily indicate, but it's an independent State ground now if they're late. And they're late. The case when you cite Henry Clark, which the Supreme Court did, that knocks out all of your equitable tolling documents. And the argument that you have to provide before us is whether there's cause and prejudice, or otherwise it's out. It's restricted our habeas corpus substantially with the State courts. It's a complete movement shift by the Supreme Court. So we were hoping to get some argument on that. We thought counsel would be ready for it. Well, Your Honor, I prepared, and I apologize to the Court for my lack of understanding and knowledge of the case. Okay. Let me just ask you theoretically, realizing that you're not specifically familiar with the Walker case. Walker says that the California Supreme Court adjudication that an application is untimely is an independent and adequate State ground for a procedural bar. Previously, the case law of this Court had been to the contrary. And so until the Supreme Court's decision, you didn't have reason to be concerned that the fact that the State Supreme Court cited Clark didn't necessarily mean that you were finished. Taking my word for it that Walker stands for that proposition, can you think of a basis upon which you can get around the independent and adequate State ground? At this point, Your Honor, I can't. I mean, if that's a complete bar, that's what we have here. It was an Henry Clark finding by the California Supreme Court. And equity matters aside, I mean, if the Supreme Court has ruled that that is, in fact, a bar to further procedures, then I don't have anything else that I could offer the Court. In terms of my facts today. Again, I recognize it's offhand. Can you think of any reason the State has — anything the State has done to waive the ability to make that argument? Not that I'm aware. Okay. Then that would leave you to one other area. That's the — we have to dismiss, absent a showing of cause and prejudice, and I know those are kind of loose definitions that we play with, but under Edwards v. Carpenter and Coleman v. Thompson, if you can show cause and prejudice, then we can go ahead and get to the merits of your case. I suspect you're not prepared to argue that to us. Your Honor, I am not. Well, you obviously came to tell us something, so you've got a couple minutes. Why don't you go ahead and tell us what you wanted to tell us? Well, Your Honor, as this Court knows, this is a — it turns on the matter of whether these attorneys that represented Mr. Alvarez were egregious in their conduct as opposed to negligent, which is what the District Court found. And it seems to me from the record that the actions of Gary Diamond and Attorney Frank Prentia were, in fact, egregious. Were they hired to represent him in the federal case? No, they were not. They were not retained to pursue the federal writ. However, Your Honor, it is clear from all the communications from the very beginning all the way through, particularly with regard to Mr. Prential, that the AEDPA was front and center in terms of their concerns as they were to proceed through the State Court process. And over time, as the record shows, the letters that went back and forth between Mr. Prential and Mr. Alvarez was nothing but delay, excuse, non-performance, and ultimately, at the end, indicating that if you pay us more money, then we'll go forward. During this entire process, also, I think it's important to consider that Mr. Diamond resigned from the bar without telling Mr. Alvarez that he had done so. Mr. Alvarez's money was returned by the client trust fund, and you have to have a showing of an act of theft in that regard. So that's Mr. Diamond, and he was in the case for about a year and a half. Mr. Prential met the same fate, but later on, he went through state bar hearings for about six months, never explained that to the client. He was ostensibly supposed to be preparing the writ, and all Mr. Alvarez got was continued excuses, delays. He also was given various dates as to when the writ was due, and all of that being completely inaccurate. And from an appellant's perspective, it's just a calculated plan on behalf of these lawyers to defeat the client's interest when, in fact, they're supposed to be just the opposite. And ultimately, Mr. Prential was removed from the state bar. How did you get around the idea that he has no constitutional right to a lawyer on appeal? How does that impact upon your argument? Well, that's true, Your Honor, but I think once the attorney takes on that duty, as it indicated in Holland and as this Court found it in Spitson, that the attorney has a duty to professional care and to a standard of performance. And in this case, both lawyers failed miserably in that regard. They misrepresented the law, they misrepresented the facts, and they didn't perform as they were supposed to, even under the contract. And beyond that, you have a situation where both lawyers are supposed to work together, and in fact, the record reveals they didn't do that at all. One of the things that Mr. Prential was complaining about was that he couldn't get a hold of Mr. Diamond at all. And so there was no continuity at all with regard to the representation of Mr. Alvarez in this case. And I think it raises itself to a level of egregiousness, which is what I think defeats the idea that you don't have necessarily a right to a counsel. Once you're retained, you have a duty to follow through, and these lawyers did not do that. And it's more than negligence. It's egregious. You want to save the balance of your time for rebuttal? Yes, Your Honor. Thank you. We'll hear from the State. May it please the Court, Violet Lee, representing Respondent. Your Honor, I am aware of the U.S. Supreme Court's recent case in Walker v. Martin. However, after some consideration about whether to send that site into the Court, I decided that I would strictly comply with the Court's question presented, which had to do with the timeliness in this case. And I felt that perhaps I would be stepping over my bounds if I were to be discussing the procedural default aspect based on the California Supreme Court citation to N. Ray Clark. And that was the reason that I did not submit that citation to the Court. And I apologize if I ---- I don't understand the State's position on this at all. You handle these cases all the time. Counsel does momentarily. We rely on the government to come up with these cases. Obviously, this case is important. So far as we can tell, it turns on it. We don't even have argument this morning. You had a 29-J opportunity to send in and send a copy to counsel. I wonder if rather than waiting to ---- and you being prepared on it, whether we wouldn't have had a better argument if you'd sent the 29-J and allowed counsel to be prepared on the new case from the Supreme Court as well. I apologize to the Court if I have been remiss. However, I did consider it, and I felt that I did not want to step beyond my bounds because the Court had defined the issue for argument, for briefing and ---- Beyond your bounds? I'm sorry. The case is right on. It disposes of it. Yes, I do agree. Fortunately, we do check now and then, as the Supreme Court says, especially when they reverse us. But it's just unfortunate you didn't send a 29-J so we could have an argument on the application of the case. I take it that you believe that Walker v. Martin does apply to this case. Yes, it certainly does. If, you know, this Court were to consider the procedural default aspect as opposed to the timeliness aspect, which is what has been defined by this Court in this case, then, yes, the case would in any event be procedurally barred under the case of Walker v. Martin. Has the State preserved its defense on that ground? I think we just raised the timeliness issue, Your Honor, because at the time, Walker v. Martin did not exist. And the case law at the time, as ---- Well, Walker v. Martin was pursued by your office. I mean, it's the Attorney General that won that case in the Supreme Court. So I have to take as a given that the office was aware of it. Has it not been pleading as a defense, the procedural bar? I can't say with 100 percent certainty, Your Honor, but I think that our pleading was a timeliness argument. But does that amount to a waiver of the defense? No, Your Honor, because it's a new case that's now come down from the U.S. Supreme Court, and I don't think that we would be barred as a result from raising that. If the Court would like me to address the timeliness issue, I would be happy to do so. That is the argument that I have prepared for today. I think that the main reasons why the petition in federal court was filed more than two years late in this case were twofold. One is that the petitioner wanted to control the process. We see this in the record where he hired a team of three attorneys and one investigator, and he wanted to see all of the pleadings before they were filed. He wanted to see the drafts. The district court made this factual finding that the petitioner directed each of his attorneys to submit his drafts to him before filing. And we see that from Prantillo sending copy after copy of his drafts to a petitioner for his approval. That's in the briefs and in the record. Maybe you could help me a little bit. You recognize that Walker v. Martin applies here, and I take it you would argue that because it's application, we can't get into that issue. I mean, it's obviously the position that the state is going to take. Because you've had Walker v. Martin and you've looked at it, and it is a case arising out of your office, perhaps you can help us a little bit of whether or not, in fact, it is dispositive of this case. So maybe you could move your argument towards whether or not there's a showing or a possibility of cause and prejudice which would keep the matter alive. Do you have a position on that? Yes. Well, the cause of the delay which resulted in the citation to N. Ray Clark in the California Supreme Court, the cause was due to the petitioner's insistence on controlling the process in the state courts where he insisted on seeing the drafts of the pleadings from his attorneys before they were filed. The other reason is also is that he was in practice. I had clients that wanted to see drafts. That didn't mean that we ultimately turned the brief in late or a petition not on a timely basis. I mean, the lawyer could presumably prepare it in time for the client to look at it and still file it timely. So why is that the client's fault? Your Honor, the other reason is that the petitioner wanted to further investigate his claims, new claims, indeed, before he had his petitions filed in the state courts. And we see this in his hiring of Ken Addison, the investigator. The Addison's declaration says from March through December 2004, he located and interviewed witnesses named by petitioner. He says, quote, during that time, my instructions regarding the investigation were primarily issued by Mr. Alvarez and very little, if any, instructions arrived directly from Attorney Prantile. We see this in the letter from Prantile to the petitioner. In fact, there are a number of letters where Prantile's urging petitioner to move on the investigation as quickly as possible. We need to file in the state courts. Otherwise, when we get to federal court, the court may dismiss your case. It was emphasized from how important it was. There is a quote from a 2004 letter from Prantile to petitioner at ER 124 where Prantile, the attorney, says, you are the boss, followed by six exclamation points. You are the boss, so I will follow your instructions. Again, evidence that he wanted to control the process. He wanted to wait until the investigation was complete. And we have many letters in the record showing Prantile saying, I'm waiting on Addison. You have the letter from Dianon to petitioner saying, I will get the pleading drafted as soon as I get the information from Addison. I'm waiting on Addison. Addison says, I've been instructed by petitioner to interview a number of witnesses. There's constant progress reports from Addison to the attorneys from Addison. So this is your argument that there's cause? The cause is not by the attorneys. It's petitioner's decision that caused the delay. Let me ask you a question. I would like the position of the State on this. Obviously, Edwards v. Carpenter and Coleman v. Thompson would be important on how we determine whether there's cause of prejudice. We have a briefing and a record and a decision in the district court which was all going towards the timeliness issue and whether or not there was delay. And then we have Walker v. Martin, which sends that all out because this is an independent State ground, appears to be, at least at first blush, a near forward to cause of prejudice, which hasn't been briefed and hasn't been argued and was something new that wasn't before the district court when the district court made this decision. What would be the position of the State if we vacated this case and remanded it to the district court to take a look at this case afresh under the basis of Walker v. Martin and determine if Walker v. Martin does apply as to whether or not there's cause and prejudice established under Edwards v. Carpenter and White Coleman v. Thompson? Your Honor, based on the record, I think that this Court probably has enough information to make a decision on the basis of Walker v. Martin without a remand. But if this Court chooses to remand, then it can be addressed in the district court. Well, we've only heard one side of it on the cause. In one of our rooms in here, it says, hear one side and be confused. Hear both sides and all be made clear. That doesn't always apply. It's usually the opposite. But there is some merit to the idea of having an argument for this prisoner based upon what we're going to decide the case, how we probably will decide the case. Yes, Your Honor. If there are no further questions, prepare to submit the case. I'd feel more comfortable about the case if the 29J letter had come and he was prepared on that issue. But cause and prejudice is pretty loose kind of stuff. You've got to read a lot of cases and look at a lot of records. We'll see. The COA was directed at a limited issue. And for that reason, I didn't want to address an issue that the Court had not raised in the COA. And, again, I apologize, Your Honor. Romano? Just briefly, Your Honor. I'm going to wait until you get up there. I take issue with the Attorney General's depiction of the facts. I think the record is abundantly clear that with regard to the cause and prejudice prong of this particular case, Mr. Addison was retained in October of 2003. The federal writ wasn't due until May 13th of 2004. And the record is empty with regard to Mr. Prantile doing anything to move the investigation forward, which is consistent with the entirety of the case where Mr. Alvarez is having to push the lawyers to do their job. And so I take issue with that. As far as the assertion that Mr. Alvarez was controlling the details of the work, that is not true. I addressed that in my reply brief. What the contract said and what Mr. Prantile told Mr. Alvarez was that I will send you drafts of things before I file it. And, furthermore, you need to sign a verification before I can file certain documents. That was the context of the conversation. It wasn't Mr. Alvarez directing the totality of this process. So those are the two points I'd like to make there. And, finally, Your Honor, and, again, I roundly apologize for not being prepared on the Supreme Court case, but I would welcome, obviously, the opportunity to brief that issue so that Mr. Alvarez gets full representation on this matter. Thank you. Thank you. Thank both counsel. The case just argued is submitted.
judges: Wallace, Noonan, Clifton